UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LUAFOW SAECHAO                                    No.  2:14-cv-2886-KJN

              Plaintiff,

        v.                                            ORDER

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

              Defendant.

      Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from January 25, 2011, through the date of the final administrative decision.  (ECF No. 14.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 17.) Plaintiff filed a reply to defendant's cross-motion for summary judgement.  (ECF No. 18.)

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 9, 10.)

1      For the reasons that follow, the court GRANTS IN PART plaintiff's motion for summary

2    judgment, DENIES the Commissioner's cross-motion for summary judgment, and remands the

3    case for further proceedings under sentence four of 42 U.S.C. § 405(g).

4    I.    BACKGROUND

5      Plaintiff was born on May 8, 1962, has no formal education, and primarily communicates

6    in Mien with little to no ability to communicate in English.  (Administrative Transcript ("AT")

7    182, 186-87.)[2]  She previously worked as a home attendant/care provider, fruit cutter/food service

8    worker and laundry sorter.  (AT 21, 188.)  On July 21, 2011, plaintiff applied for DIB and SSI,

9    alleging that her disability began on January 25, 2011, at the age of 46.  (AT 60.)  Plaintiff alleged

10    that she was disabled primarily due to complications arising from hearing voices, anxiety,

11    depression, and hallucinations.  (Id.)  After plaintiff's applications were denied initially and on

12    reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which

13    took place on April 4, 2013, and at which plaintiff, using an interpreter and represented by an

14    attorney, as well as a vocational expert testified.  (AT 11.)  The ALJ issued a decision dated June

15    24, 2013, determining that plaintiff had not been under a disability, as defined in the Act, between

16    January 25, 2011, and the date of that decision.  (AT 11-21.)  The ALJ's decision became the

17    final decision of the Commissioner when the Appeals Council denied plaintiff's request for

18    review on October 14, 2014.  (AT 1-6.)  Plaintiff then filed this action in federal district court on

19    December 11, 2014, to obtain judicial review of the Commissioner's final decision.  (ECF No. 2.)

20    II.    ISSUES PRESENTED

21      On appeal, plaintiff raises the following issues:  (1) whether the ALJ improperly rejected

22    the opinions of consultative examining psychologists Drs. Ewing and Stiles; and (2) whether the

23    ALJ improperly rejected the opinion of plaintiff's treating physician Dr. Marzano.

24    ///

25

26    [2] Because the parties are familiar with the factual background of this case, including plaintiff's
medical and mental health history, the court does not exhaustively relate those facts in this order.

27    The facts related to plaintiff's impairments and treatment will be addressed insofar as they are
relevant to the issues presented by the parties' respective motions.

28

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). However, the court may only consider the reasons given by the ALJ for his decision and "may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630.

IV.    DISCUSSION

A.    Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or

3

1    remained insured for purposes of DIB through June 30, 2012.  (AT 13.)  At the first step, the ALJ

2    concluded that plaintiff had not engaged in substantial gainful activity since January 25, 2011, the

3    alleged onset date.  (Id.)  At step two, the ALJ found that plaintiff had the following severe

4    impairment:  a major depressive disorder.  (Id.)  However, at step three, the ALJ determined that

5    plaintiff did not have an impairment or combination of impairments that met or medically equaled

6    the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 14-15.)

7         Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

8    ("RFC") as follows:

9    > After careful consideration of the entire record, the undersigned
       finds that the claimant has the residual functional capacity to
10   > perform a range of medium level work activity pursuant to 20 CFR
       404.1567(c) and 416.967(c), except she can lift and carry 50 pounds
11   > occasionally, 25 pounds frequently, sit for six hours in an eight-
       hour workday and stand/walk for six hours in an eight-hour
12   > workday. The claimant can perform simple repetitive tasks with
       occasional interaction with supervisors and coworkers and with few
13   > changes in the workplace.

14   (AT 15.)

15        At step four, the ALJ determined that plaintiff was capable of performing past relevant

16   work as a laundry sorter and fruit cutter.  (AT 20.)  Thus, the ALJ concluded that plaintiff had not

17   been under a disability, as defined in the Act, from January 25, 2011, through the date of the

18   ALJ's decision.  (AT 21.)

19

20   equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
     claimant is automatically determined disabled.  If not, proceed to step four.

21

22   Step four:  Is the claimant capable of performing her past relevant work?  If so, the
     claimant is not disabled.  If not, proceed to step five.

23

24   Step five:  Does the claimant have the residual functional capacity to perform any
     other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

25   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

26

27        The claimant bears the burden of proof in the first four steps of the sequential evaluation
     process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
     evaluation process proceeds to step five.  Id.

28

4

B.      Plaintiff's Substantive Challenges to the Commissioner's Determinations

*1.     The legal standard for evaluating medical opinions.*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Id. at 830.

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

////

---

[4] The factors include:  (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

Here, the ALJ discussed three medical opinions regarding plaintiff's limitations based on her mental impairments[5] and rejected all of them at least in part:  two opinions by examining psychologists Drs. Ewing and Stiles, and one opinion by Dr. Marzano, plaintiff's treating physician.  (AT 16-20.)

    *2.    Whether the ALJ erred by rejecting the opinions of examining psychologists Drs. Ewing and Stiles.*

Dr. Ewing's opinion was based on an examination of plaintiff on October 24, 2011, performed at the request of the Commissioner.  (AT 373.)  On that date, Dr. Ewing reviewed plaintiff's medical records and had the assistance of an interpreter.  (Id.)  Dr. Ewing diagnosed plaintiff as having "major depressive disorder, recurrent, severe with psychotic features."  (Id.)  Dr. Ewing opined that plaintiff was able to adequately perform one or two step simple repetitive tasks, but may not be able to adequately perform complex tasks due to her "concentration, memory and attention deficits."  (AT 377.)  Dr. Ewing determined that plaintiff's ability to accept instructions from supervisors, interact with co-workers and the public, handle normal work related stress, and maintain regular attendance in the workplace was poor to fair.  (Id.)  Dr. Ewing stated that plaintiff had a poor ability to maintain regular attendance in the workplace based on her daily and chronic psychiatric symptoms.  (Id.)  Finally, Dr. Ewing opined that plaintiff "is not able to perform work activities on a consistent basis without special or additional instruction as there are some attention, memory and concentration difficulties that are noted at this time."  (Id.)

Nearly nine months after Dr. Ewing's opinion, on July 16, 2012, Dr. Stiles examined the plaintiff at the request of the Commissioner and issued an opinion.  (AT 394.)  Dr. Stiles had the services of an interpreter and reviewed plaintiff's medical records.  (AT 394-96.)  Dr. Stiles diagnosed plaintiff with "major depression, severe with psychotic symptoms."  (AT 398.)  Dr. Stiles opined that plaintiff could perform one or two step simple repetitive tasks, but was unable to perform complex tasks because of her intellectual impairments.  (Id.)  Dr. Stiles further opined that plaintiff had a fair ability to accept instructions from supervisors and interact with coworkers

---

[5] On appeal, plaintiff does not challenge the physical capacity portion of the ALJ's RFC.

and the public.  (Id.)  Dr. Stiles opined that plaintiff had a fair to poor ability to maintain regular

attendance in the workplace, or complete a normal workday or workweek without interruptions

from a psychiatric condition.  (Id.)  Dr. Stiles opined that plaintiff had a poor ability to handle

normal work related stress from a competitive work environment.  (Id.)  Finally, Dr. Stiles opined

that plaintiff was not able to perform work activities on a consistent basis without special or

additional instruction because of her intellectual impairments.  (Id.)

     For the reasons discussed below, the ALJ failed to provide specific and legitimate reasons

for discounting these opinions. [6]

     The ALJ discounted the opinions' clinical findings that plaintiff had impairments to

attention and concentration because such findings were "possibly due to language barrier."  (AT

17.)  However, both consultative examiners had the assistance of an interpreter.  Even though Dr.

Stiles noted that the section of her exam dealing with proverbs "does not translate," that simply

demonstrates that Dr. Stiles was able to note that linguistic barriers interfered with a specific

portion of the exam.  (AT 373-78.)  Given the complete absence of any other references to

linguistic difficulties in the opinion, there is simply no basis for asserting that a language barrier

affected the clinical findings regarding attention or concentration.[7]  (AT 394-99.)  Such

speculation is not supported by the record and does not provide a specific and legitimate reason to

discount the examining physicians' opinions.  Lester, 81 F.3d at 830-31.

---

[6] There are contradictory opinions in the record.  For example, Dr. Mateus's nonexamining
opinion states that plaintiff "should be able to sustain at least simple tasks with minimal contact
with people within her physical tolerance," thus contradicting the more severe opinions of Drs.
Ewing and Stiles.  (AT 92.)  Therefore, the appropriate standard is whether the ALJ provided
"specific and legitimate reasons" for discounting the examiners' opinions.  Lester, 81 F.3d at 830-
31.

[7] There is equally no basis for Dr. Funkenstein's similar speculation that he "suspect[ed] that [Dr.
Ewing] ha[d] little understanding of the cross-cultural issues of a Laotian immigrant." (AT 65.)
Dr. Ewing had the assistance of an interpreter and specifically noted that he was unable to assess
plaintiff's ability to understand proverbs due to cultural differences. (AT 373, 376.)  Dr. Ewing
did not indicate cultural difficulties regarding any other portion of the exam.  (AT 373-78.)  In
any event, the record gives no indication that Dr. Funkenstein was appropriately qualified to
render an opinion regarding the impact of "cross-cultural issues," particularly given that he had
not even personally examined plaintiff.

1    The ALJ also discounted the opinions as "based primarily" on plaintiff's subjective and

2    self-reported psychotic symptoms, such as auditory hallucinations, which the ALJ found not

3    credible.  (AT 373, 394).  However, irrespective of the credibility of plaintiff's auditory

4    hallucinations, Drs. Ewing and Stiles specifically based their assessed limitations on their clinical

5    findings regarding plaintiff's attention, concentration, and memory.  (AT 377, 398.)  Furthermore,

6    both doctors explicitly stated that their respective opinions were "[b]ased on the results of the

7    requested mental status exam and clinical interview, including personal history and

8    accompanying documents…."  (Id.)  Therefore the ALJ's finding that these opinions were "based

9    primarily" on plaintiff's subjective reporting of hallucinations or other psychotic symptoms is not

10   supported by the record, and does not constitute a specific and legitimate reason for discounting

11   the consultative examiners' opinions.  (AT 17-19.)

12   The ALJ further alluded to an inconsistency between plaintiff's daily activities and the

13   opinions of Drs. Ewing and Stiles.  (AT 19.)  However, the mental limitations assessed by Drs.

14   Ewing and Stiles are not obviously inconsistent with plaintiff being independent in basic activities

15   of daily living, not requiring assistance in preparing meals, being able to make change at the

16   store, and spending the day walking.  (AT 19, 375, 396).  Without further explanation by the ALJ,

17   conclusions at this level of generality simply cannot constitute a specific and legitimate reason for

18   discounting the consultative examiners' opinions.

19   The ALJ also appears to rely on his finding of an inconsistency between the assessed

20   mental limitations and plaintiff's treatment recommendations.  (AT 20.)  The ALJ references two

21   specific treatment recommendations:  Dr. Nguyen's recommendation that the plaintiff start a mild

22   exercise plan (AT 470) and the Wellness and Recovery Center's ("WRC") Annual Service Plan,

23   which recommended that plaintiff attend a WRC support group.  (AT 484.)  However, Dr.

24   Nguyen is not a psychiatrist or psychologist, and his recommendations were issued to help

25   plaintiff treat her physical impairments.  Furthermore, the WRC's recommendation was based on

26   an explicit finding that plaintiff's ability to socialize was impaired and was intended to help build

27   plaintiff's social skills in a highly structured environment.  (AT 484.)  The ALJ does not

28   articulate how those treatment recommendations were inconsistent with the mental limitations

8

1  assessed by the consultative examiners.

2           Therefore, the court concludes that the ALJ has not provided specific and legitimate

3  reasons to discount the opinions of the consultative examiners.  Remand for further consideration

4  of those opinions is warranted.[8]

5           3.       Other Issues

6           Plaintiff contends that the ALJ also erred by discounting the opinion of Dr. Marzano,

7  plaintiff's treating physician.  At least at an initial glance, Dr. Marzano's opinion appears to be a

8  checklist with minimal clinical findings or medical rationale in support of its conclusions.  (AT

9  434-36.)  Furthermore, Dr. Marzano's treatment records are very sparse.  (AT 482-98.)

10 Nevertheless, because the court concludes that remand is necessary to further consider the

11 opinions of the consultative examiners, the ALJ will have an opportunity to reconsider Dr.

12 Marzano's opinion, if appropriate, and explain the ultimate weight accorded to that opinion.

13          4.       Instructions on remand

14          On remand, the ALJ shall further consider the opinions of the consultative examiners.

15 The ALJ is also free to develop the record in other ways, as needed.  Importantly, the court

16 expresses no opinion regarding how the evidence should ultimately be weighed, and any

17 ambiguities or inconsistencies resolved, on remand.  The court also does not instruct the ALJ to

18 credit any particular opinion or testimony.  Nevertheless, the ALJ's decision shall comply with

19 applicable legal standards and be supported by substantial evidence in the record as a whole.

20 V.    CONCLUSION

21          For the foregoing reasons, IT IS HEREBY ORDERED that:

22          1.       Plaintiff's motion for summary judgment (ECF No. 14) is GRANTED IN PART.

23          2.       The Commissioner's cross-motion for summary judgment (ECF No. 17) is

24 DENIED.

---

25 [8] The only relief requested by the plaintiff in her motion for summary judgment is a remand for
26 further proceedings.  (ECF No. 14 at 6, 25.)  Plaintiff again confirmed as much in her reply brief,
   stating "plaintiff seeks one outcome through this action: remand for further proceedings…."
27 (ECF No. 18 at 1-2.) Therefore, the court need not, and does not, consider whether plaintiff is
   entitled to a remand for payment of benefits.

28

9

1          3.       The Commissioner's final decision is REVERSED and the action is REMANDED

2    for further proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).

3          4.       Judgment is entered for plaintiff.

4          IT IS SO ORDERED.

5    Dated:  February 9, 2016

6

7                                                                KENDALL J. NEWMAN
                                                                 UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10